IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL A. GOW and ANDREW GOW, Plaintiffs | § § § § | |
| v. | § § | |
| EXXON MOBIL CORPORATION, MAGELLAN BEHAVIORAL HEALTH, INC., and MAGELLAN HEALTH SERVICES, INC., Defendants | § § § § § § | CA-H-cv- _____ Jury |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW MICHAEL A. GOW and ANDREW GOW, Plaintiffs, and complain of EXXON MOBIL CORPORATION, MAGELLAN BEHAVIORAL HEALTH, INC., and MAGELLAN HEALTH SERVICES, INC., Defendants, as follows:

I.

### JURISDICTION

1.  This court has jurisdiction over the subject matter of this lawsuit pursuant to The Employee Retirement Income Security Act of 1974, ("ERISA") as amended, 29 USC Section 1001 et seq., and the court's pendent jurisdiction.

II.

### PARTIES

2.  Plaintiff Michael A. Gow is a resident of Harris County, Texas.

3.  Plaintiff Michael A. Gow is a "participant" as that term is defined in 29 USC Section 1002(7).

4.  Plaintiff Michael A. Gow further is an "employee" as that term is defined in 29 USC Section 1002(6).

5.  Plaintiff Andrew Gow is a resident of Harris County, Texas.

6.  Plaintiff Andrew Gow is a "beneficiary" as that term is defined in 29 USC Section 1002(8).

Page 2

7. Defendant Exxon Mobil Corporation ("Exxon Mobil") is an active, for profit, business entity engaged in an industry affecting commerce and is an "employer" within the meaning of 29 USC Section 1002(5).

8. Defendant Exxon Mobil Corporation further is a "plan sponsor" as that term is defined in 29 USC Section 1002(16)(B).

9. At all times relevant to this lawsuit Defendant Exxon Mobil Corporation maintained an "employee welfare benefit plan" or a "welfare plan" as those terms are defined in 29 USC Section 1002(1)(A).

10. At all times relevant Exxon Mobil's employee welfare benefit plan was known as The Exxon Mobil Medical Plan ("Medical Plan" or "Plan").

11. Defendant Exxon Mobil Corporation may be served with process by serving its Registered Agent, Corporation Service Company, 211 East Seventh Street, Suite 620, Austin, Texas 78701.

12. At all times relevant to this lawsuit Exxon Mobil's Medical Plan was administered by Defendant Magellan Behavioral Health, Inc.

13. Defendant Magellan Behavioral Health, Inc., ("Magellan") is a "plan administrator" as that term is defined in 29 USC Section 1002(16)(A)(i).

14. In June 2014 Magellan Behavioral Health, Inc., changed its name to Magellan Healthcare, Inc.

15. Defendant Magellan Behavioral Health, Inc., may be served with process by serving its Registered Agent, Corporation Service Company, 211 East Seventh Street, Suite 620, Austin, Texas 78701.

16. Al all times relevant, Defendant Magellan Health Services, Inc., was the parent company of Magellan Behavioral Health, Inc., and, therefore, also is a "plan administrator" as that term is defined in 29 USC Section 1002(16)(A)(i).

17. In June 2014 Magellan Health Services, Inc., changed its name to Magellan Health, Inc.

18. Defendant Magellan Health Services, Inc., may be served with process by

Page 3

serving its Registered Agent, Prentice Hall Corporation System, at 211 East Seventh Street, Suite 620, Austin, Texas 78701.

## III.

## VENUE

19.     Venue of this action is proper in this judicial district because the parties to this lawsuit reside or transact business in this judicial district; the actions, events, and developments which have given rise to the causes of action sued upon occurred in this judicial district; and the causes of action upon which Plaintiffs sue accrued in this judicial district.

20.     Venue is also proper pursuant to 29 USC Section 1132(e)(1).

## IV.

## NATURE OF LAWSUIT

21.     Plaintiffs seek to recover benefits due them under the terms of Exxon Mobil's Medical Plan, to enforce their rights under the Plan, and to clarify their rights to future benefits under the terms of the Plan. This action is pursued under 29 USC Section 1132(a)(1)(B).

## V.

## FACTS

22.     Plaintiffs are father and son. Michael A. Gow is the father of Andrew Gow.

23.     Plaintiff Michael A. Gow has been employed by Exxon Mobil since 2002 and is still employed by Exxon Mobil.

24.     As an employee of Exxon Mobil, Michael A. Gow made contributions to Exxon Mobil's Medical Plan and was, at all times relevant, covered by the Plan as a participant.

25.     As a relative of Michael A. Gow, Andrew Gow was, at all times relevant, a beneficiary under Exxon Mobil's Medical Plan.

26.     At all times relevant to this lawsuit, Andrew Gow was under the age of 26. The year of his birth is 1996.

Page 4

27. When still in high school, and especially after completing high school, Andrew Gow developed behavioral problems. His father, Michael A. Gow, retained a psychologist to assist him deal with his behavioral problems. When that proved unsuccessful, Michael A. Gow retained a psychiatrist to help Andrew Gow confront his behavioral problems.

28. The psychiatrist recommended Andrew Gow be treated in a specialized mental treatment center.

29. In 2013 Michael A. Gow worked for Exxon Mobil in Nigeria. While he was outside of the United States, Andrew Gow attempted suicide, was violent at home, and developed additional harmful behaviors.

30. As early as March 2013, and then again on June 21, 2013 Deeba Ashraf, MD, recommended to Andrew Gow's parents that they consider treatment for Andrew Gow at the Menninger Clinic, a mental health facility in Houston, Texas.

31. Dr. Ashraf had been Andrew Gow's therapist and psychiatrist since December 2012. She diagnosed Andrew Gow as suffering from anxiety, depressive symptoms, and an adjustment disorder with disturbances of mood and conduct. She also opined that psychological factors were largely responsible for affecting Andrew Gow's ability to attend school regularly.

32. Between December 2012 and April 2013 Andrew Gow had attended ten (10) sessions with Dr. Ashraf. Unfortunately, they were unsuccessful.

33. In the meanwhile, Andrew Gow's behavioral problems deteriorated significantly, causing him to not attend school and eventually not receive credit for six (6) subjects in the Fall 2013 high school semester.

34. To deal with his rapidly deteriorating behavioral difficulties, Michael A. Gow placed Andrew Gow, in January 2014, in managed care at the Menninger Clinic in Houston, Texas. Andrew Gow was admitted there for assessment and treatment on January 15, 2014. At that time he was 17.

35. On January 16, 2014 Magellan informed Andrew Gow that it had conducted a

Page 5

medical necessity review and authorized treatment for him at the Menninger Clinic from January 15 to 16, 2014.

36. On January 16, 2014 Magellan cancelled the prior authorization claiming that it needed a doctor-to-doctor direct communication to ascertain Andrew Gow's medical condition. The doctor-to-doctor communication was to be held by a doctor appointed for that purpose by Magellan with a relevant doctor at the Menninger Clinic.

37. The doctor-to-doctor communication was to occur by phone but Magellan cancelled the phone conference at the last minute.

38. On January 17, 2014 Magellan addressed a letter to Andrew Gow informing him that the previously approved medical care had been rescinded because one of its medical specialists determined that the "treatment is not medically necessary." It cited to a specific paragraph in Magellan's 2014 Magellan Behavioral Health Medical Necessity Criteria and added: "You do not currently have active thoughts of taking your own or someone else's life. You are not hearing or seeing things which are not real or present. You are able to do age appropriate self care. Your parents are supportive. You are not considered an imminent risk to yourself or others at this time."

39. All these conclusions were factually inaccurate with the exception of the statement that Andrew Gow's parents were supportive of his mental and medical condition. Nor did Magellan attempt to verify the veracity of these factual allegations before making them or relying on them to deny treatment to Andrew Gow.

40. As a result, Magellan informed Andrew Gow that it would not authorize "Inpatient, Psychiatric treatment as of 01/18/2014."

41. Magellan has been told, on numerous occasions, that Andrew Gow was suicidal, a real potential of harm to himself and others, and unable to function properly in school or at home.

42. On February 25, 2014 Magellan notified Andrew Gow that it had "authorized 12 day(s), 02/24/2014 through 03/24/2014" (sic!) of "outpatient treatment" but no treatment at the Menninger Clinic. Inpatient care, however, was denied.

Page 6

43. On April 7, 2014 Magellan dated a letter to Andrew Gow informing him that "inpatient" treatment had been denied from January 18, 2014 to February 21, 2014 as not being "medically necessary based on 2014 Magellan's Medical Necessity Criteria" due to a number of reasons." However, the reasons outlined in the letter were inaccurate and not based on the real events and mental and medical condition which Andrew Gow experienced during that time.

44. The April 7, 2014 letter informed Andrew Gow that he had the right to appeal Magellan's denial of benefits.

45. On May 2, 2014 Michael A. Gow appealed Magellan's denial of benefits and provided a large body of factual evidence that the denial was wrongful and the benefits should not be denied. Among others, he pointed out that Andrew Gow had suffered from an "acute anxiety disorder for more than 2 years;" his behavior "included depression, inability to attend school, suicidal thoughts, suicidal attempts and irrational outbursts including dangerous physical behavior;" Andrew Gow's medical providers and high school educators insisted he be placed for treatment at the Menninger Clinic;" "at no time did any professional from Magellan Behavioral Health review Andrew's medical files, interview Andrew or his parents or in any other way collect any meaningful information that would allow someone from [Magellan's] staff to make a life and death decision regarding treatment for Andrew;" prior to being treated at the Menninger Clinic Andrew Gow's had seen other specialists who, however, were unable to successfully treat his mental and behavioral issues; and that Michael A. Gow had sustained serious financial hardship keeping Andrew Gow in inpatient treatment in the Menninger Clinic to prevent him from taking his own life.

46. On May 23, 2014 Magellan dated another letter to Andrew Gow informing him that Michael A. Gow's appeal had been denied. In support of the denial, Magellan repeated the same rationale as the one in the April 7, 2014 letter.

47. Michael A. Gow continued to appeal the denial of benefits, and, on March 7, 2016 was informed that all appeals had been exhausted. In all, Michael A. Gow did four (4) appeals. All were denied.

Page 7

48.     Under the terms of Exxon Mobil's Medical Plan Plaintiffs have a year, following the denial of the last appeal, to file a civil action to recover the benefits due them under the Plan.

49.     In this action Plaintiffs seek to recover the benefits due them under the Plan for the period from January 18, 2014 to February 21, 2014, inclusive. During this time, Michael A. Gow paid, using personal funds, $56,000.00 for the inpatient medical and mental health care provided to Andrew Gow by the Menninger Clinic in Houston, Texas.

VI.

PLAINTIFFS' ERISA CAUSE OF ACTION TO RECOVER BENEFITS

50.     Plaintiff Michael A. Gow and Plaintiff Andrew Gow reallege all factual allegations made in the preceding paragraphs and would show that Defendants are liable to them, jointly and severally, for unlawful denial of benefits under Exxon Mobil's Medical Plan. Plaintiffs file this action under 29 USC Section 1132(a)(1)(B) "to recover benefits due them under the terms of [the] plan, to enforce [their] rights under the terms of the plan, [and] to clarify [their] rights to future benefits under the terms of the plan."

51.     At all times relevant, Plaintiff Michael A. Gow was a participant under the Plan, and Plaintiff Andrew Gow was a beneficiary under the Plan.

52.     Defendant Exxon Mobil was an employer and a plan sponsor under ERISA, and Defendant Magellan Behavioral Health, Inc., and Defendant Magellan Health Services, Inc., were the Plan's administrators. They wrongfully denied the Plaintiffs their rights and benefits under the Plan.

53.     The Plan administrators' interpretation of the relevant policies and the processing of the relevant facts and medical data was unreasonable. The Plan administrators failed to consider relevant facts and medical data related to Andrew Gow and willfully disregarded data and facts provided to them by Michael A. Gow and Andrew Gow's medical providers.

54.     The Plan administrators failed to consider the likely and imminent harm to

Page 8

Andrew Gow's health.

55. The Plan administrators abused their discretion in denying benefits under the Plan to the Plaintiffs. Specifically, there was not substantial evidence in the record to support the Plan administrators' decisions, including those to deny or to terminate benefits to the Plaintiffs under the Plan. The denial was arbitrary and capricious.

56. Defendants' acts proximately caused Plaintiffs actual and compensatory damages. Moreover, Defendants' acts were perpetrated with malice or with reckless disregard for Plaintiffs' rights and, as such, Plaintiffs request that the court allow exemplary damages against Defendants on this count.

57. Plaintiffs seek actual damages, recovery of benefits, reasonable and necessary attorneys' fees, interest, and expenses.

58. Additionally, Plaintiffs bring this claim against Defendants pursuant to 29 USC Section 1132(1) and (2) to enjoin acts and practices of the Defendants which violate the Employee Retirement Income Security Act, as amended, the terms of the plan, to redress such violations, to enforce the provisions of the plan, and to obtain appropriate equitable relief.

VII.

PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY

59. Plaintiff Michael A. Gow and Plaintiff Andrew Gow further reallege the factual allegations made above and would show that Defendant Magellan Behavioral Health, Inc., and Defendant Magellan Health Services, Inc., were, at all relevant times, fiduciaries as defined in 29 USC Section 1102, or, alternatively, under the common law of the State of Texas, and owed the Plaintiffs the fiduciary duties enumerated in 29 USC Section 1004, as well as those established and recognized under the common law of the State of Texas.

60. In failing to properly investigate and assess the facts and the medical condition of Andrew Gow prior to denying him benefits under Exxon Mobil's Medical Plan, in additionally failing to redress the harm they caused Andrew Gow after Michael A. Gow and medical staff at the Menninger Clinic appraised them of facts reflecting the deteriorating

Page 9

mental and medical condition of Andrew Gow, as well as in failing to reinstate the benefits due them under the Plan, Defendants breached their fiduciary duties to the Plaintiffs under both, ERISA and Texas common law.

61. Plaintiffs have been harmed by Defendants' breach of their fiduciary duties to them. Accordingly, they seek to recover from Defendant Magellan Behavioral Health, Inc., and Defendant Magellan Health Services, Inc., all damages commonly available to them under Texas common law for breach of fiduciary duty, including disgorgement.

VIII.

DAMAGES

62. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful practices unless and until this court grants relief.

IX.

JURY DEMAND

63. Plaintiffs respectfully demand a trial by jury.

X.

PRAYER FOR RELIEF

64. WHEREFORE, PREMISES CONSIDERED, Plaintiff Michael A. Gow and Plaintiff Andrew Gow pray that Defendant Exxon Mobil Corporation, Defendant Magellan Behavioral Health, Inc., and Defendant Magellan Health Services, Inc., be cited to appear and answer and that on final trial Plaintiffs be granted relief as follows:

1. Judgment declaring that the acts and practices described herein violate The Employee Retirement Income Security Act of 1974, as amended, 29 USC Section 1001 et seq.;

2. Judgment enjoining and permanently restraining these violations;

3. Judgment directing Defendants to pay Plaintiffs actual, compensatory, liquidated, and punitive damages on all counts, whether statutory or common law, and benefits under the Plan;

Page 10

    4.       Judgment clarifying Plaintiffs' rights under the plan;

    5.       Costs of suit and reasonable attorney's fees;

    6.       Prejudgment and postjudgment interest as provided by law; and

    7.       Such other and further relief, in law and in equity, to which Plaintiffs may be justly entitled.

        Respectfully submitted,

        BY: //ss// *peter costea*
        _____
        Peter Costea
        TBN 04855900
        2603 Augusta, Suite 880
        Houston, Texas 77057
        Tel. 713-337-4304
        Fax 713-780-7111
        ATTORNEY FOR PLAINTIFFS
        MICHAEL A. GOW and ANDREW GOW